7 F.3d 35
 17 Employee Benefits Cas. 1978, Pens. Plan Guide P 23885E
NYSA-ILA PENSION TRUST FUND, by and through its Trustees,
John BOWERS; James A. Capo; Albert Cernadas; Bart
DiMattina; John W. Millard; Richard H. O'Neill; Anthony
Pimpinella and Thomas Popola, Plaintiffs-Counterclaim
Defendants-Appellants,
v.
GARUDA INDONESIA; Bank Bumi Daya; Bank Negara, Indonesia
1946; Bank Dagang Negara and Bank Ekspor Impor
Indonesia, Defendants-Counterclaim
Plaintiffs-Appellees.
 No. 1876, Docket 93-7230.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 11, 1993.
Decided Oct. 4, 1993.
 
 Donato Caruso, Lambos & Giardino, and Ernest L. Mathews, Jr., Gleason & Mathews, New York City (C. Peter Lambos, Lambos & Giardino; Thomas W. Gleason, Gleason & Mathews, of counsel), for plaintiffs-counterclaim defendants-appellants.
 Christopher Brady, Hollyer, Brady, Smith, Troxell, Barrett, Rockett, Hines & Mone, New York City, for defendants-counterclaim plaintiffs-appellees.
 Before: WINTER, MINER and WALKER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 In October of 1991, plaintiffs-counterclaim defendants-appellants John Bowers, James A. Capo, Albert Cernadas, Bart DiMattina, John W. Millard, Richard H. O'Neill, Anthony Pimpinella and Thomas Popola, as Trustees of NYSA-ILA Pension Trust Fund ("the Fund"), brought this action in the United States District Court for the Southern District of New York (Leval, J.) against defendants-counterclaim plaintiffs-appellees Garuda Indonesia, the national airline of Indonesia, and four Indonesian Banks, Bank Bumi Daya, Bank Negara, Bank Dagang Negara and Bank Ekspor Impor Indonesia ("the Defendants"), to impose withdrawal liability pursuant to the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001-1461 (1988 & Supp. III 1991) ("ERISA"). The gravamen of the Fund's complaint was that the Defendants, together with P.T. Djakarta Lloyd ("Djakarta") (against which the Fund held a $1,317,276.44 judgment), were "trades or businesses ... which [were] under common control," as defined by ERISA, see id. § 1301(b)(1), and that the Defendants therefore were jointly and severally responsible for the withdrawal liability incurred by Djakarta.
 
 
 2
 Both parties moved for summary judgment, and, in a Memorandum Opinion and Order dated March 1, 1993, the district court dismissed the Fund's complaint and directed the entry of summary judgment for the Defendants. The district court found that the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602-1611 (1988) ("FSIA"), divested it of subject matter jurisdiction in this case. For the reasons that follow, we affirm.
 
 BACKGROUND
 
 3
 The Fund is a multiemployer employee pension benefit plan that provides retirement benefits to eligible longshore workers in the Port of New York and New Jersey ("the Port"). Employer contributions to the Fund were made in accordance with assessments that were based on cargo tonnage loaded and unloaded in the Port. The airline and four commercial banks that are the Defendants are owned by the government of the Republic of Indonesia. Each of the Defendants maintains its principal office in Indonesia and has a local office in New York City. Djakarta is a commercial shipping company that transports cargo to and from various ports throughout the world. Like the Defendants, Djakarta is owned by the government of Indonesia.
 
 
 4
 Djakarta has operated in the Port since at least the 1960s and has employed the services of longshore workers to load and unload its cargoes. During the time when it operated in the Port, Djakarta was a party to collective bargaining agreements with the longshore workers' union and made employer contributions to the Fund, as required by the agreement. When Djakarta ceased operating in the Port in 1985, it incurred withdrawal liability under the provisions of Subchapter III, Subtitle E of ERISA, 29 U.S.C. §§ 1381-1453, for its proportionate share of the Fund's unfunded, vested benefits. On April 27, 1987, the Fund commenced an action in the United States District Court for the Southern District of New York (Haight, J.) against Djakarta to collect the amount due on the withdrawal liability. On October 15, 1990, the district court entered judgment for the Fund in the amount of $1,317,276.44, which represented the withdrawal liability and statutory penalties mandated by ERISA, 29 U.S.C. § 1132, see Bowers v. P.T. Djakarta Lloyd, 721 F.Supp. 481 (S.D.N.Y.1989), as modified on reconsideration, No. 87 Civ. 2820, 1990 WL 128922 (S.D.N.Y. Aug. 29, 1990).
 
 
 5
 Djakarta did not appeal from the judgment of the district court, and neither Djakarta nor its parent, the government of Indonesia, yet has satisfied any portion of the judgment. The Fund contends that it has not been able to enforce the judgment because Djakarta does not have any assets in the United States and because the courts of Indonesia do not recognize money judgments issued by American courts.
 
 
 6
 In October of 1991 the Fund commenced the action giving rise to this appeal, alleging that Djakarta and the Defendants were businesses under common control within the meaning of ERISA section 4001(b)(1), 29 U.S.C. § 1301(b)(1), which provides that "all employees of trades or businesses ... which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." Accordingly, the Fund asserted that the Defendants were jointly and severally responsible for Djakarta's withdrawal liability. In May of 1992, both parties moved for summary judgment. In their motion for summary judgment, the Defendants principally argued: (1) that the FSIA divested the district court of subject matter jurisdiction; and (2) that they and Djakarta were not members of a controlled group.
 
 
 7
 On March 10, 1993, the district court entered judgment for the Defendants, finding that each of the Defendants was a distinct foreign state under the FSIA and that the Defendants' conduct did not fall within the commercial activity exception of the FSIA. Because it dismissed the Fund's action on jurisdictional grounds, the district court did not reach the issue of whether the Defendants and Djakarta were members of a group under common control as defined by ERISA.
 
 DISCUSSION
 
 8
 The FSIA is the sole source of subject matter jurisdiction for federal courts in cases involving foreign states. Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434, 109 S.Ct. 683, 688, 102 L.Ed.2d 818 (1989). If the foreign sovereign immunity provisions of the FSIA are applicable, a federal court is divested of subject matter jurisdiction over the action. Id. The FSIA provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604. A defendant corporation that is owned entirely by a foreign state also is considered to be a distinct foreign state and immune from the jurisdiction of the federal courts. Id. §§ 1603(a), 1603(b)(2), 1604. See First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba, 462 U.S. 611, 625-28, 103 S.Ct. 2591, 2599-2601, 77 L.Ed.2d 46 (1983).
 
 
 9
 One exception to foreign state immunity that is provided by the FSIA is the "commercial activity" exception, which provides that a foreign state will not be immune from suit in federal court if "the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." Id. § 1605(a)(2). The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act." Id. § 1603(d). A "commercial activity carried on in the United States by a foreign state" is defined as a "commercial activity carried on by such state and having substantial contact with the United States." Id. § 1603(e). In construing the commercial activity exception, courts have required that a significant nexus exist between the commercial activity in this country upon which the exception is based and a plaintiff's cause of action. See, e.g., Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo General del Sindicato Revolucionario de Trabajadores Petroleros de la Republica Mexicana, S.C., 923 F.2d 380, 386-87 (5th Cir.1991); Barkanic v. General Admin. of Civil Aviation of the Peoples Republic of China, 822 F.2d 11, 13 (2d Cir.), cert. denied, 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 393 (1987); see also Saudi Arabia v. Nelson, --- U.S. ----, ---- - ----, 113 S.Ct. 1471, 1477-78, 123 L.Ed.2d 47 (1993) (whether a plaintiff's cause of action is "based upon" a defendant's commercial activities in the United States requires "something more than a mere connection with, or relation to, commercial activity").
 
 
 10
 In rejecting the Fund's arguments that it had established a significant nexus between the Defendants' commercial activities in the United States and the Fund's action to impose withdrawal liability, the district court stated:
 
 
 11
 Plaintiffs' cause of action against these five corporations is predicated solely on the fact that they are under common control with Djakarta Lloyd--a fact that would be true regardless whether those defendants did or did not engage in commercial activity in the United States. Accordingly, plaintiffs fail to demonstrate any significant nexus between the defendants['] commercial activity in this country and the cause of action.
 
 
 12
 We agree with the district court's conclusion. Here, the Fund's action to impose withdrawal liability is based upon the activities of Djakarta in the United States, which included Djakarta's shipment of goods in and out of the Port, its participation in the longshore workers' collective bargaining agreements and its payment of tonnage assessments. There is no significant nexus between any of these activities and the Defendants' banking and commercial airline activities in the United States. Therefore, because each instrumentality of a foreign government is treated as a distinct foreign state under the FSIA, the commercial activities of Djakarta cannot be imputed to the Defendants in this case.
 
 
 13
 The Fund principally argues on appeal that the district court should have attributed Djakarta's commercial activities in the United States to the Defendants. To support this argument, the Fund interprets the Supreme Court's decision in First National City Bank as allowing courts to enlarge the FSIA commercial activities exception to encompass foreign government entities whenever another statute or rule of law makes it possible to disregard the separate juridical status of similarly situated private entities. In this case, so the argument goes, the "controlled group" provision of ERISA, 29 U.S.C. § 1301(b)(1), is the statutory provision that allows us to disregard the separate juridical identities of the Defendants and Djakarta. The Fund's reliance on First National City Bank for this proposition is misplaced.
 
 
 14
 In First National City Bank, Banco Para el Comercio Exterior de Cuba ("Bancec"), a commercial bank operated by the Cuban government for the purpose of furthering its foreign trade policy, sued Citibank on a letter of credit. 462 U.S. at 614-15, 103 S.Ct. at 2593-94. Prior to this suit, the Cuban government had seized and nationalized Citibank's Cuban assets and, before Citibank answered, had dissolved Bancec and divided its capital between Banco National de Cuba, Cuba's central bank, and the Cuban Ministry of Foreign Trade. Id. In its answer, Citibank counterclaimed, seeking a setoff for the value of its seized assets. Id., at 616, 103 S.Ct. at 2594. Essentially, Citibank sought to "pierce the corporate veil" and hold Bancec liable for the actions of its "parent," the government of Cuba. Applying these equitable principles derived from corporate law, the Court held that Bancec's separate juridical status could not be used to bar Citibank's counterclaim. Id., at 623-33, 103 S.Ct. at 2598-2603. This holding was based on the Court's conclusion that, since the Cuban government was the only beneficiary of Bancec's claim, it could not avail itself of the opportunity to pursue that claim without exposing itself to liability for its own actions. Id., at 630-33, 103 S.Ct. at 2602-03.
 
 
 15
 In a similar manner the Fund in this case, using the provisions of ERISA, would like this Court to disregard the separate juridical status of the Defendants. Fatal to the Fund's reliance on First National City Bank, however, is that subject matter jurisdiction in that case clearly was established. Bancec there conceded that Citibank's counterclaim fell within the FSIA exception permitting counterclaims that plead only a setoff, 28 U.S.C. § 1607(c). First Nat'l City Bank, 462 U.S. at 620, 103 S.Ct. at 2597. In contrast, the Fund has not established the applicability of any exception to the FSIA. Before a federal court may apply corporate law, or the controlled group provisions of ERISA or any other rule of law in a case involving a foreign state or instrumentality of that state, it must, as a threshold matter, find an exception to the FSIA's grant of sovereign immunity. Such a finding cannot be made here.
 
 
 16
 Finally, the Fund's attempt to read the provisions of ERISA into the commercial activity provision of the FSIA also must fail because the "controlled group" provisions of ERISA expressly are restricted to Subchapter III of that statute (Plan Termination Insurance). See 29 U.S.C. § 1301(b)(1). Although Subchapter III of ERISA creates substantive liability in a proper case, it does not purport to confer jurisdiction on federal courts in cases involving foreign sovereigns; only the FSIA can confer such jurisdiction. Because we agree that the district court properly dismissed the Fund's action on the ground that it failed to meet the jurisdictional requirements set forth in the FSIA, we need not reach the issue of whether the Defendants and Djakarta were members of a group under common control as defined in ERISA.
 
 
 17
 We have considered the Fund's remaining arguments with respect to the district court's decision that it lacked jurisdiction and find them to be without merit.CONCLUSION
 
 
 18
 For the foregoing reasons, the judgment of the district court is hereby affirmed.